# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 26-35-DLB-CJS

QUEEN CITY MECHANICALS, INC.                                   **PLAINTIFF**

v.                    <u>**MEMORANDUM OPINION AND ORDER**</u>

BOONE COUNTY, KENTUCKY, and
LONKARD CONSTRUCTION CO.                              **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This matter is before the Court on Plaintiff Queen City Mechanicals' ("QCM") Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (the "Emergency Motion"). (Doc. # 3). On March 5, 2026, the Court held oral argument on the Emergency Motion. (Doc. # 20). The matter is now ripe for consideration. For the reasons stated herein, QCM's Emergency Motion (Doc. # 3) is **granted in part** and **denied in part**.

## I.    FACTUAL BACKGROUND

QCM's Emergency Motion emanates from the bidding process involved in awarding the contract for the Boone County Watermain Expansion – Group 3.1 (the "Project"). Boone County, via the Boone County Fiscal Court, issued an invitation to bid for the Project on November 19, 2025 (the "Invitation to Bid"). (Doc. # 15 ¶ 4).[1] The Invitation to Bid established several ground rules for the bidding process and informed

---

[1]    The Parties have submitted Joint Stipulations of Facts in this matter. (Doc. # 15). The following factual background will incorporate the facts as laid out in the Parties' Joint Stipulations unless noted otherwise.

prospective bidders of the criteria for selection. (*See generally* Doc. # 10-6). Specifically, the Invitation to Bid stated that "[t]he scoring of bids/proposals is subject to Reciprocal Preference for Kentucky Resident Bidders[.]" (*Id.* ¶ 3(Q)). This requirement comports with Boone County Ordinance 6.05(B), which states that in a public works project subject to competitive sealed bidding, "[t]he invitation for bids shall include the reciprocal preference for resident bidders described in KRS 45A.494." (Doc. # 15-1 at 1). The Invitation to Bid provided that "[a]ward will be made to the lowest responsive and responsible bid" subject to enumerated considerations, including the quality of the goods or services to be supplied, the bid's conformity with the Project's specifications, and the bidder's suitability to the requirements. (Doc. # 10-6 ¶ 3(J)). Further, the Invitation to Bid stated that a bid from the lowest responsive and responsible bidder "shall be accepted as submitted" unless that bid exceeds the available funds. (*Id.*). However, the Invitation to Bid also made clear that Boone County "reserve[d] the right to reject any and all bids" and to "accept that bid which is deemed the most desirable and advantageous . . . ." (*Id.* ¶ 2.3). According to the Invitation to Bid, this included the right to accept a bid that may not, "on its face, appear to be the lowest and best price." (*Id.*). The Invitation to Bid also allowed disappointed bidders to file a protest with the Deputy County Administrator. (*Id.* ¶ 3(O)). The Deputy County Administrator would prepare a written recommendation, which would be issued to the County Administrator. (*Id.*). Upon consideration of this recommendation, the County Administrator would issue a "final and conclusive" written decision. (*Id.*).

QCM, an Ohio corporation, prepared and submitted a bid for the Project in conformity with Boone County's requirements on December 10, 2025. (*Id.* ¶ 8). On or

about December 15, 2025, Boone County opened the sealed bids which had been submitted, revealing QCM to be the low bidder. (*Id.* ¶¶ 11-12). QCM's bid was roughly $1,400 lower than the next lowest bidder, Defendant Lonkard Construction, Co. Lonkard is a Kentucky corporation with its principal place of business in Florence, Kentucky. (Doc. # 10 ¶ 5). Although QCM was the low bidder and Boone County never voiced any concerns regarding QCM's responsibility or suitability, Boone County decided to award the contract for the Project to Lonkard. (*Id.* ¶ 15).

In early January 2026, QCM reached out to Boone County to inquire as to why it was not awarded the contract. (*Id.* ¶ 16). Boone County responded to QCM's inquiry on or about January 8, 2026, and stated that Boone County applied a five-percent preference to Lonkard's bid because Lonkard is a Kentucky company. (*Id.* ¶ 17). After application of this preference, Lonkard was the lowest bidder. (*Id.*). At that time, Boone County did not identify a reason for awarding the contract to Lonkard aside from the fact that Lonkard was the lowest bidder. (*Id.* ¶ 18). QCM objected to the application of a preference, arguing that Kentucky's preference law does not apply against bidders from states that do not apply a preference against Kentucky bidders. (*Id.* ¶ 19). Because QCM is an Ohio corporation and because Ohio does not apply a preference against Kentucky bidders, QCM maintained that Boone County erroneously applied a preference in favor of Lonkard. (*Id.*)

On or about January 19, 2026, Thomas Yocum, counsel for QCM, e-mailed Matthew Dowling—Deputy Boone County Administrator—to inform him that QCM was lodging a formal protest of the County's decision to award the contract to Lonkard. (*Id.* ¶ 23). On January 21, 2026, Mr. Dowling responded to Mr. Yocum's e-mail and explained

the procedure for evaluating a protest. (*Id.* ¶ 24). Mr. Dowling explained that he would personally review the protest before making a written recommendation to the County Administrator who, in turn, would issue a final decision. (*Id.*; *see also* Doc. # 12-1 ¶ 28). In his January 21, 2026 e-mail, Mr. Dowling also explained Boone County's decision to apply a five-percent preference in favor of Lonkard and the other Kentucky bidders. (*Id.* ¶ 25). Mr. Dowling invited QCM to "provide additional information that is contrary to [Boone County's] interpretation" and stated that, if QCM offered such guidance, Boone County "would be happy to review and discuss." (*Id.*).

Following up on this invitation, on January 23, 2026, Mr. Yocum e-mailed Mr. Dowling and argued that Boone County was misinterpreting the applicable statutes. (*Id.* ¶ 26). Specifically, Mr. Yocum maintained that KRS 45A.494 restricted Boone County's ability to independently determine whether a preference should apply against a non-resident bidder. (*Id.*). That statute, Mr. Yocum contended, required the Kentucky Finance and Administration Cabinet to compile and maintain a list of states that give or require a preference for their own domestic bidders, and he further argued that Boone County was bound to defer to this list in its application of a residential preference. (*Id.*; *see also* Doc. # 10-10 at 3-4). Mr. Yocum also requested any document or list that the Finance and Administration Cabinet had provided to Boone County. (*Id.*). Mr. Dowling responded to Mr. Yocum's e-mail on January 29, 2026 and stated that Boone County had "not made an effort to obtain the information of which [Mr. Yocum] inquired" and set a deadline of February 3, 2026, for QCM to provide additional legal authority supporting its position. (*Id.* ¶ 27; *see also* Doc. # 10-10 at 2)). As a result, on January 30, 2026, Mr. Yocum

4

informed Mr. Dowling of QCM's intention to initiate litigation regarding the bid process. (*Id.* ¶ 27).

On February 2, 2026, QCM filed the Complaint (Doc. # 2) in this matter and simultaneously moved ex parte for a temporary restraining order or preliminary injunction. (Doc. # 3).  At the time QCM filed its Complaint, Boone County had not issued a decision regarding QCM's formal protest.  (Doc. # 15 ¶¶ 28-30).  Nor had Boone County executed a contract for the Project with Lonkard.  (*Id.*).  On February 3, 2026, this Court held a hearing on QCM's Emergency Motion, at which counsel for QCM, Boone County, and Lonkard were present.  (Doc. # 7).  After the hearing, the Parties submitted an Agreed Order preserving the status quo to allow for a more fulsome briefing of QCM's Emergency Motion.  (Doc. # 8).  On February 4, 2026, QCM filed its Amended Complaint, adding a claim under 42 U.S.C. § 1983.  (Doc. # 10).  Boone County filed its Response in Opposition to QCM's Emergency Motion on February 6, 2026.  (Doc. # 12).  Lonkard also filed a Response in Opposition on the same date.  (Doc. # 14).  QCM filed its Reply on February 9, 2026.  (Doc. # 16).

The Court held a second hearing on QCM's Emergency Motion (Doc. # 3) on February 10, 2026, with counsel for each party present.  (Doc. # 17).  At that hearing, the Parties acknowledged that QCM's protest remained pending.  (*Id.*).  Boone County informed the Court that it anticipated resolution of the protest no later than February 18, 2026.  (*Id.*).  To allow for exhaustion of this administrative process, the Court continued oral argument to March 5, 2026.  (*Id.*).  Boone County Administrator Matthew H. Webster issued a final Determination of QCM's protest on February 13, 2026 finding that "[t]he recommendation for the award of the contract [for the Project] to Lonkard Construction,

5

Inc. is consistent with the policies of the County, and the application of the resident bidder preference in an amount of 5% is reasonable and appropriate." (Doc. # 18-1 at 6). The Parties reconvened for a hearing on QCM's Emergency Motion (Doc. # 3) on March 5, 2026. (Doc. # 20). Both Defendants having filed Responses in opposition to the Emergency Motion (Docs. # 12 and 14), QCM having filed a Reply (Doc. # 16),[2] and the Court having heard oral argument, (Doc. # 20), the matter is ripe for review.

## II. STANDARD OF REVIEW

QCM's Emergency Motion requests both a temporary restraining order ("TRO") and a preliminary injunction preventing Boone County and Lonkard from entering into a contract for the Project. (Doc. # 3 at 15). However, because the Parties agreed to a stay of execution or performance of a contract during the briefing of this Motion, the Court **denies** QCM's Motion for a TRO as **moot** and considers only the propriety of a preliminary injunction. *See Kentucky v. Biden*, 571 F. Supp. 3d 715, 721 n. 4 (E.D. Ky. 2021) (noting that "[c]ourts frequently construe joint TRO and preliminary injunction motions as a motion for a preliminary injunction only and deny the TRO as moot") (citations omitted).

Pursuant to Federal Rule of Civil Procedure 65, parties may petition the court to enter preliminary injunctions in appropriate circumstances. Fed. R. Civ. P. 65(a). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)) (citations omitted). When

---

[2]    QCM additionally filed a Supplemental Response in support of its Emergency Motion on February 23, 2026 to address Boone County's Determination of QCM's protest. (Doc. # 19).

evaluating a request for a preliminary injunction, the Court must examine (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer immediate, irreparable harm in the absence of a preliminary injunction; (3) whether the preliminary injunction would cause substantial harm to others; and (4) whether the preliminary injunction would serve the public interest.  *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (quoting *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)).  However, these factors "do not carry equal weight."  *Memphis A. Phillip Randolph Inst. v. Hargett*, 478 F. Supp. 3d 699, 703 (M.D. Tenn. 2020).  These factors are not prerequisites that must be met but, instead, interrelated concerns that must be balanced against one another.  *Ne. Ohio Coal. For Homeless and Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Failure to show a strong likelihood of success on the merits ordinarily dooms a motion for a preliminary injunction.  *Gonzales v. Nat. Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).  And failure to show that the movant faces immediate, irreparable harm "is always fatal" to such a motion.  *Int'l. Union of Painters and Allied Trades Dist. Council No. 6 v. Smith*, No. 1:23-cv-502, 2024 WL 1012967, at *5 (S.D. Ohio Mar. 8, 2024 (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).  The overarching purpose of preliminary injunctive relief is to preserve the relative positions of the parties until the Court can hold a trial on the merits.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2002) (citing *Univ of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)); *see also Tennessee v. Cardona*, 737 F. Supp. 3d 510, 528-29 (E.D. Ky. 2024).

III.    **ANALYSIS**

A.    **Likelihood of Success on the Merits**

QCM's Amended Complaint brings six individual claims for relief: (1) a deprivation of rights under 42 U.S.C. § 1983, (2) an action for a declaratory judgment pursuant to 28 U.S.C. § 2201, (3) injunctive relief, (4) judicial review of the bid protest, (5) breach of bid requirements, and (6) detrimental reliance.  (Doc. # 10 ¶¶ 45-108).  Before turning to the individual claims, however, the Court will examine two principal issues—Boone County's application of Kentucky preference law and Boone County's discretion to accept and reject bids on the Project.

*1. Boone County Likely Misapplied Kentucky Preference Law*

QCM asserts that all of its claims "turn on the same fundamental question of Kentucky law, can a Kentucky governmental body apply a preference to resident bidders against a bidder from Ohio?"  (Doc. # 3 at 8).  QCM posits that the answer is no.  And this contention provides "the entire basis for [QCM's] request for declaratory judgment, request for injunctive relief, request for judicial review of the bid protest, the basis for breach of the bid requirements, and the correct interpretation is the promise upon which QCM replied [sic]."  (*Id.*).  Because QCM was the lowest bidder prior to the application of the preference, QCM argues that it is entitled to the contract.  (*Id.* at 12).  Thus, QCM maintains that its Amended Complaint—and, consequently, its Emergency Motion (Doc. # 3)—hinges on the propriety of Boone County's decision to apply a preference against QCM.

Before turning to Kentucky preference law, a brief overview of the law governing the procurement of public contracts is in order.   In Kentucky, procurement authority

8

generally flows from one of two statutes.  The first, the Kentucky Model Procurement Code ("KMPC"), KRS 45A.005 *et seq.*, applies to procurement contracts entered into by the Commonwealth of Kentucky, but does not bind local governments, like Boone County, unless specifically adopted.  *See Mac Const. and Excavating, Inc. v. City of Warsaw*, No. 2:10-cv-16-ART, 2010 WL 2044488, at *2 (E.D. Ky. May 21, 2010) (citing *Expert Masonry, Inc. v. Boone Cnty.*, 440 F.3d 336, 350 n. 6 (6th Cir. 2006)).  The Kentucky Supreme Court has recognized that, under the KMPC, disappointed bidders may seek relief when a publicly bid contract is awarded in a manner that is "arbitrary and capricious or contrary to law[.]"  *Com. v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 206 (Ky. 2007) (citing *Pendleton Bros. Vending, Inc. v. Com. Finance and Admin. Cabinet*, 758 S.W.2d 24, 24 (Ky. 1988)).  Where a local government has not adopted the KMPC, its procurement authority springs from KRS 67.083(3).  *Expert Masonry*, 440 F.3d at 348-49.  That statute empowers fiscal courts to "carry out governmental functions necessary for the operation of the county" including the enactment of ordinances regarding "[p]rovision of water and sewage and garbage disposal service[.]"  KRS 67.083(3)(r).  "Kentucky courts have construed this grant of discretion broadly."  *Expert Masonry*, 440 F.3d at 349.  Indeed, a disappointed bidder generally cannot challenge procurement decisions made pursuant KRS 67.083 "absent a showing of fraud, collusion or dishonesty[.]"  *HealthAmerica Corp. of Ky. v. Humana Health Plan, et al.*, 697 S.W.2d 946, 948 (Ky. 1985).

Relevant to this case, the KMPC calls for a "reciprocal preference to be given by governmental bodies to resident bidders."  KRS 45A.494.  The section establishing this preference states that:

> Prior to a contract being awarded to the lowest responsible and responsive bidder on a contract by a governmental body, a resident bidder of the

9

Commonwealth shall be given a preference against a nonresident bidder registered in any state that gives or requires a preference to bidders from that state. The preference shall be equal to the preference given or required by the state of the nonresident bidder.

KRS 45A.494(1). This section also requires that the Finance and Administration Cabinet "maintain a list of states that give or require preference for their own resident bidders, including details of the preference given to such bidders." KRS 45A.494(6). That list is "to be used by governmental bodies in determining resident bidder preferences." *Id.*

Boone County has not adopted the KMPC. (Doc. # 12 at 6). Thus, its procurement authority stems from KRS § 67.083. Accordingly, under Kentucky law, Boone County had "broad discretion" to award the contract for the Project. *Expert Masonry*, 440 F.3d at 350. Nevertheless, QCM argues that Boone County limited its own broad discretion by passing restrictive ordinances and establishing clear rules in the Invitation to Bid. (Doc. # 3 at 12). Specifically, QCM claims that Boone County was obligated to adhere to the in-state bidder preference established by KRS 45A.494.[3] (Doc. # 3 at 8). Indeed, in the Invitation to Bid on the contract for the Project, Boone County incorporated "Kentucky Preference Law." (Doc. # 10-6 § 3(Q)). Likewise, Boone County Ordinance 6.05(B) dictates that, in a contract to be awarded by competitive sealed bidding, "[t]he invitation

---

[3]     QCM argues that KRS 45A.494 "exists outside of the Local Public Agency Procurement section of the [KMPC] and is a mandatory state law that Boone County must adhere to . . . regardless of its decision to adopt the provision into its own ordinances." (Doc. # 16 at 3). The Court disagrees. KRS 45A.494 falls within the KMPC and, as a result, does not bind Boone County in the absence of express adoption. *Expert Masonry*, 440 F.3d at 348-49. This is underscored by the fact that KRS 45A.494, by its own terms, applies to contracts awarded by "governmental bod[ies]," which the KMPC defines as "any department, commission, council, board, bureau, committee, institution, legislative body, agency, governmental corporation, or other *establishment of the executive or legislative branch of the state government.*" KRS 45A.030(17) (emphasis added). Boone County is not a "governmental body," so the terms of KRS 45A.494—like the rest of the KMPC—only bind Boone County where specifically incorporated or adopted.

for bids shall include the reciprocal preference for resident bidders described in KRS 45A.494." (Doc. # 15-1 at 1).  Therefore, Boone County was bound to apply KRS 45A.494 prior to awarding the contract.  The Parties agree on this point.  (*See* Doc. # 2-10 at 5-6).  However, QCM maintains that Boone County erred in applying the preference against it.  (Doc. # 3 at 12).  The Court agrees.

Boone County interpreted Ohio law to "give a preference against Kentucky bidders in instances where a construction contract is bid."  (Doc. # 12 at 8).  Specifically, Boone County concluded that, because O.R.C. § 153.012 calls for the application of a preference in favor of Ohio bidders against a nonresident bidder that would receive such a preference in their home state, it triggers KRS 45A.494.  (*Id.* at 9-10).  Having concluded that Ohio does apply a resident-bidder preference and, consequently, that KRS 45A.494 required the application of an equivalent, reciprocal preference, Boone County sought to quantify the preference it would apply in favor of Kentucky bidders.  (Doc. # 18-1 ¶ 15).  However, this proved a difficult task.  As noted above, neither O.R.C. § 153.012 or KRS 45A.494 establishes a specific percentage to be applied.  So, "[t]o avoid simply choosing an arbitrary number," Boone County looked to another Ohio resident-bidder preference program—the Buy Ohio Program.  (*Id.* ¶ 15).

The Buy Ohio Program, laid out in O.R.C. §§ 125.09 and 125.11 requires Ohio's Director of Administrative Services to adopt a rule prescribing criteria and procedures for use by all Ohio state agencies in giving a preference.  Pursuant to this authority, Ohio applies a five-percent preference in favor of "Ohio" bidders over nonresident bidders.  O.A.C. § 123:5-1-06(B); (*see also* Doc. # 2-4 at 11 – Ohio Procurement Vendor Handbook).  However, Ohio law "also provides that bidders from states bordering Ohio

qualify on an equal basis as an Ohio bidder."  (Doc. # 2-4 at 11); *see also* O.A.C. § 123:5-1-06(A)(2).  Kentucky qualifies as a border state.  (*Id.*).  Accordingly, the five-percent preference established by the Buy Ohio Program would actually inure to Kentucky bidders' benefit.  Furthermore, the Buy Ohio Program does not appear to apply to construction contracts but, rather, the procurement of "products or services."  O.R.C. § 125.09(A).  Nevertheless, Boone County utilized the Buy Ohio Program's five-percent preference as a basis for applying a five-percent preference in favor of Lonkard and the other Kentucky bidders.  (Doc. # 18-1 ¶ 16).

The Court agrees with QCM that Boone County likely erred in its application of KRS 45A.494.[4]  The terms of KRS 45A.494(1) establish a reciprocal preference.  That is, no preference will apply against a nonresident bidder unless that entity hails from a state that applies a preference against Kentucky bidders.  QCM is an Ohio corporation.  (Doc. # 10 ¶ 3).  This means that Boone County could only apply a preference against QCM if Ohio would apply a preference against Kentucky bidders.  *See* 200 KAR 5:400 § 2(4) ("This preference shall not be applied against nonresident bidders residing in states that do not give preference against Kentucky bidders.").  However, Ohio law does not appear to apply such a preference.

---

[4]    In addition to its argument that Boone County conducted a flawed application of Ohio and Kentucky preference law, QCM argues that Boone County failed to defer to the Finance and Administration Cabinet's list of state preferences.  (Doc. # 16 at 3).  KRS 45A.494(6) states that this list is "to be used by governmental bodies in determining resident bidder preferences."  Here, Matthew Dowling, in his correspondence with counsel for QCM, acknowledged that Boone County did not consult or even seek to obtain this list.  (Doc. # 2-10 at 2).  Because the Court finds that Boone County's interpretation of Kentucky preference law was flawed, it need not determine whether KRS 45A.494(6) requires procuring entities to defer to or consult the list of state preferences promulgated by the Finance and Administration Cabinet prior to the application of a resident-bidder preference.

Under Ohio Revised Code § 153.012, in a construction contract, Ohio will apply a preference "[w]here a preference is provided by another state for contractors of that state[.]"  And the preference Ohio will apply shall be "the same preference" applied "in the same manner and on the same basis and to the extent as the preference" applied by the other state.  O.R.C. § 153.012.  Thus, much like Kentucky, Ohio applies a reciprocal preference to nonresident contractors bidding on a public construction contract. Additionally, the Buy Ohio Program likely does not apply to construction contracts but, rather, contracts for the procurement of goods and services.  *See* O.R.C. § 125.09(A). And even if the Buy Ohio Program *does* prescribe a five-percent preference to Ohio bidders on construction contracts, this preference would not apply against Kentucky bidders because Kentucky borders Ohio.  (Doc. # 2-4 at 11).  Thus, none of the statutes cited by Boone County allows for the application of a preference against Kentucky bidders for public contracts.

QCM has shown that Boone County likely erred in its application of a five-percent preference in favor of Lonkard and the other Kentucky bidders.  However, contrary to QCM's contention, this does not end the Court's inquiry.

### 2. *Boone County's Discretion*

Defendants argue that, even if Boone County mistakenly applied the five-percent preference against QCM, Boone County had broad discretion to award the contract for the Project to Lonkard, regardless of QCM's status as the lowest bidder.  (Docs. # 12 at 6 and 14 at 2).  This discretion, Defendants continue, means that QCM cannot succeed on the merits of the claims raised in the Amended Complaint.  (Doc. # 14 at 4).  The Court will

now turn to the extent of Boone County's discretion in awarding the contract and its effect on QCM's claims.

### a.    Federal Claims

QCM brings two claims under federal law.   First, QCM alleges that Boone County—acting under color of state law—deprived QCM of its "vested constitutionally protected property interest" in the contract for the Project.  (Doc. # 10 ¶¶ 46, 48).  Second, Boone County seeks a declaratory judgment under to 28 U.S.C. § 2201 declaring that, among other things, QCM is "entitled to award of the contract on the Project and compensation for losses suffered as a result of Boone County's incorrect application of Kentucky Law." (*Id.* ¶ 65).  Because QCM does not have a cognizable property right in or entitlement to the contract for the Project, QCM has failed to show a substantial likelihood of success on its federal claims.

### i.    *42 U.S.C. § 1983*

QCM argues that, as the lowest responsive and responsible bidder, it has "a vested constitutionally protected property interest in the contract for the Project." (Doc. # 10 ¶ 48).   Furthermore, QCM claims that Boone County violated this property interest by awarding the contract to Lonkard even though QCM was the lowest responsive and responsible bidder.  (*Id.* ¶ 55).

Section 1983 vests individuals with the ability to bring suit against any person who, acting under color of law, deprives the plaintiff of any "rights, privileges, or immunities secured by the Constitution and [federal] laws . . . ."  42 U.S.C. § 1983.  "The statute is thus limited to deprivations of *federal* statutory and constitutional rights." *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (emphasis in original)

(citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).  Here, QCM argues that it has a constitutionally protected property right to the contract for the Project.  (Doc. # 10 ¶ 48).

A bidder can demonstrate a constitutionally protected property interest in a publicly bid contract in two ways.  Specifically, a "bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract."  *Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 260 (citations omitted).  QCM argues the latter approach.  Accordingly, the Court "must ascertain whether [Boone County] had limited discretion in awarding the contract and, if so, whether [Boone County] abused that discretion when it awarded the contract[] to [Lonkard]."  *Expert Masonry*, 440 F.3d at 348.

Despite Boone County's likely misapplication of Kentucky preference law, QCM has failed to show a cognizable property interest because it has not shown that it is entitled to the contract for the Project.  *Charlie's Towing & Recovery, Inc. v. Jefferson Cnty.*, 183 F.3d 524, 527 (6th Cir. 1999).  As discussed above, Boone County has not adopted the KMPC.  (Doc. # 12 at 6).  Accordingly, its procurement authority flows from KRS 67.083(3).  *Expert Masonry*, 440 F.3d at 349.  And the Sixth Circuit has observed that this statute confers broad discretion on local governments like Boone County.  *Id.* ("Kentucky courts have construed this grant of discretion broadly.").  Indeed, under Kentucky law, a disappointed bidder cannot challenge procurement decisions made pursuant to KRS 67.083 "absent a showing of fraud, collusion or dishonesty[.]" *HealthAmerica Corp. of Ky.*, 697 S.W.2d at 948.

QCM, however, contends that Boone County limited its own broad discretion by promulgating the Invitation to Bid.  In the Invitation to Bid on the Project, Boone County

set out several parameters.  One of these parameters provides for the application of "Kentucky preference law."  (Doc. # 10-6 ¶ 3(Q)).  Another states that

> [a]ward will be made to the lowest responsive and responsible bid subject to the considerations that follow: the quality of the goods and/or services to be supplied, the conformity with the specifications, and the suitability to the requirements.  The delivery terms, qualifications, and references will be taken into consideration in making an award.  Unless canceled or rejected, a responsive bid from the lowest responsible bidder shall be accepted as submitted except that if the bid from the lowest responsible bidder exceeds available funds.

(*Id.* ¶ 3(J)).  This provision, QCM argues, means that Boone County lacked the discretion to award the contract to anyone other than a responsible bidder who submitted the lowest responsive bid.  (Doc. # 10 ¶ 48).  Mr. Yocum reiterated this point during oral argument on the Emergency Motion.  However, the Invitation to Bid reiterates, in numerous sections, that Boone County "reserves the right to reject any and all bids, and to waive any informality if it is determined to be in the best interest of the County."  (Doc. # 10-6 ¶ 3(K)).  Section two of the Invitation to Bid states, in no uncertain terms, that

> Boone County reserves the right to reject any and all bids, to waive any informalities and to negotiate for the modifications of any bid or to accept that bid which is deemed the most desirable and advantageous from the standpoint of customer value and service and concept of operations, *even though such bid may not, on its face, appear to be the lowest and best price*.

(*Id.* ¶ 2.3) (emphasis added).  And the Bid Specifications, which were attached to the Invitation to Bid, state that "[l]owest bid, while a major consideration, will not exclusively govern the Bid Award."  (Doc. # 10-7 at 7).

The Sixth Circuit addressed a similar invitation to bid in *Willie McCormick & Associates, Inc. v. City of Detroit*.  61 F. App'x 953, 956 (6th Cir. 2003).  There, Detroit solicited bids on a contract to improve the city's water system.  *Id.* at 954.  However, the city only accepted bids from firms that were certified as either a "Detroit Based Business"

or a "Small Business Enterprise." *Id.* The plaintiff in *Willie McCormick* submitted the second lowest bid but protested that the lowest bidder was neither a "Detroit Based Business" or a "Small Business Enterprise." *Id.* Detroit ultimately denied the plaintiff's protest and the plaintiff sued. *Id.* The plaintiff argued that the invitation to bid limited Detroit's discretion in such a manner as to create a property right. *Id.* at 956. Specifically, the plaintiff pointed to a provision that "[i]f [Detroit] elects to award the Contract, [Detroit] will make the award to the Bidder who submits the lowest responsive bid." *Id.* However, the bid documents also "made clear that [Detroit] retained discretionary authority to reject any or all bids, as well as to waive any nonconformities." *Id.* The Sixth Circuit concluded that this "reservation of rights provision clearly limit[ed] the plaintiff from forming a reasonable expectancy amounting to a property interest." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Because Detroit retained discretion to reject the plaintiff's bid, even if it was the lowest, the *Willie McCormick* plaintiff lacked a cognizable property right. *Id.*

QCM's allegations closely resemble those in *Willie McCormick*. QCM alleges that Boone County misapplied a mandatory provision of the Invitation to Bid, which unseated QCM as the lowest bidder and led to the erroneous awarding of the contract to Lonkard. (Doc. # 10 ¶¶ 55-57). Further, QCM alleges that the Invitation to Bid contained imperative language calling for Boone County to award the contract to the lowest responsible and responsive bidder, another point emphasized by QCM's counsel during oral argument. (*Id.* ¶ 56). As a result, QCM claims that it has a "vested constitutionally protected property interest in the contract for the Project." (*Id.* ¶ 48).

17

However, binding Sixth Circuit precedent cuts in the opposite direction.  Much like the plaintiff in *Willie McCormick*, QCM has no more than a unilateral expectancy in the contract for the Project.  61 F. App'x at 956 (citing *Roth*, 408 U.S. at 577).  Indeed, the Sixth Circuit has repeatedly observed that where a procuring entity reserves the right to reject any and all bids, a disappointed bidder lacks a cognizable property interest.  *See Charlie's Towing & Recovery, Inc. v. Jefferson Cnty.*, 183 F.3d 524, 527 (6th Cir. 1999) (holding that bid invitation did not create a constitutionally protected property interest where it expressly reserved the right to reject any and all bids); *Id.* (same); *Expert Masonry*, 440 F.3d at 350 (noting that "Boone County's own ordinances do not by their plain language restrict the county's discretion in awarding contracts, and the language of the bidding documents expressly provided for the county's discretion in selecting the winning bids" and finding that the plaintiff lacked a cognizable property interest in a publicly bid contract).  To establish a property interest, a disappointed bidder must show that a procuring entity failed to abide by the terms governing the contract award *and* that if the procuring entity had abided by these terms, the plaintiff would have been entitled to the contract.  *Willie McCormick*, 61 F. App'x at 956.  Indeed, "the failure of a governmental body to follow a given procedure does not create a property right."  *Charlie's Towing*, 183 F.3d at 528.

Here, Boone County had discretion to reject any and all bids and to "accept that bid which is deemed the most desirable and advantageous from the standpoint of customer value and service and concept of operations, even though such bid may not, on its face, appear to be the lowest and best price."  (Doc. # 10-6 ¶ 2.3).  Accordingly, even if QCM was the lowest responsive and responsible bidder, Boone County

maintained discretion to award the contract to Lonkard or any of the other bidders.[5]  QCM has failed to show that it was entitled to the contract for the Project and that Boone County's purported abuse of discretion divested QCM of its rights to the contract. Accordingly, QCM is not likely to establish a cognizable property interest, and it has failed to show a substantial likelihood of success on its § 1983 claim.

### ii.    Declaratory Judgment

QCM also seeks a judgment from the Court declaring that, "as a matter of law, Defendant, Boone County, cannot apply a preference against QCM in awarding the contract for the Project, QCM is the lowest, responsive, and responsible bidder *and* is entitled to award of the contract on the Project and compensation for damages . . . ." (Doc. # 10 ¶ 65) (emphasis added).  As discussed above, QCM lacks a cognizable property interest, and has not shown that it is entitled to the contract.  Thus, the Court cannot issue a judgment declaring that QCM is "entitled to award of the contract on the Project[.]"  (*Id.*).  Even if Boone County had correctly applied Kentucky preference law and concluded that QCM was the lowest responsible and responsive bidder, Boone County retained discretion to reject QCM's bid and award the contract to Lonkard.  QCM has therefore failed to meet its heavy burden of demonstrating a substantial likelihood of success on its claim for a declaratory judgment.

---

[5]    At the March 5, 2026 hearing, counsel for QCM argued that even though Boone County reserved the right to reject any and all bids, Boone County did not actually reject QCM's bid, it merely accepted Lonkard's.  The Court rejects this argument.  In accepting Lonkard's bid, Boone County necessarily rejected QCM's—and every other disappointed bidder's—bid.  *Rejection*, BLACK'S LAW DICTIONARY (8th ed. 2004) (defining rejection as "A *refusal to accept* a contractual offer") (emphasis added).

### b.    Kentucky Claims

Having concluded that QCM has failed to show a substantial likelihood of success on its federal claims, the Court now turns to QCM's three[6] claims under Kentucky law: a request for judicial review of the bid protest, breach of the bid requirements, and detrimental reliance.  The Court will first address QCM's claim for judicial review of the bid protest before turning to the other Kentucky claims.

### i.    *Request for Judicial Review*

QCM asks the Court to review Boone County's decision—explained in the County Administrator's formal determination—to deny QCM's protest and apply a five-percent preference against QCM and in favor of the Kentucky bidders.  (Doc. # 10 ¶¶ 87-88).  The Court must determine whether QCM has standing to seek such review and, if so, what standard of review governs.

The traditional rule in Kentucky holds that, where a local government has not adopted the KMPC, a disappointed bidder lacks standing to judicially challenge the award of a public contract to another bidder "absent a showing of fraud, collusion or dishonesty[.]"  *Pendleton Bros.*, 758 S.W.2d at 25 (quoting *HealthAmerica Corp. of Ky.*, 697 S.W.2d at 948).  To have standing under Kentucky law where the KMPC does not apply, a disappointed bidder must possess "a judicially recognizable interest in the subject

---

6    Count III of the Amended Complaint is titled "Request for Injunctive Relief" and seeks a "Preliminary Injunction and a Permanent Injunction" preventing Boone County and Lonkard from entering a contract for the Project.  (Doc. # 10 ¶ 72).  The allegations associated with this claim largely reiterate QCM's arguments in support of its Emergency Motion (Doc. # 3).  A standalone request for injunctive relief does not constitute a cause of action.  *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) (holding that dismissal of such requests is appropriate).  "Injunctions are remedies, not causes of action."  *Church Mut. Ins. Co. v. Smith*, No. 3:14-cv-749-JHM, 2015 WL 3480656, at *6 (W.D. Ky. Jun. 2, 2015).  Because Count III of QCM's Amended Complaint fails to state a legitimate cause of action, QCM necessarily fails to show a substantial likelihood of success on this claim.

matter of the suit." *HealthAmerica Corp. of Ky.*, 697 S.W.2d at 947 (citing *Lexington Retail Beverage Dealers Assn. v. Dep't of Alcoholic Beverage Control*, 303 S.W.2d 268 (Ky. 1957)).   And this interest must be "present or substantial as opposed to a mere expectancy."   *Com. v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 205 (Ky. 2007) (citation omitted).

However, the KMPC "changed the rules of the game," and "provid[ed] access not previously available to challenge and investigate the propriety of government purchasing contracts." *Pendleton Bros.*, 758 S.W.3d at 24.   Disappointed bidders have expanded standing, at least where the KMPC is involved.   *Id.* at 25.   The *Pendleton Bros.* Court acknowledged that, prior to the adoption of the KMPC, judicial review was unavailable in the absence of fraud and collusion.   *Id.*   The Court noted that "the purpose of the [KMPC] is to elevate state purchasing to a higher level of conduct.   To accomplish this, the KMPC imposes rules with objective criteria in purchasing, criteria previously lacking, and provides enforcement for these standards."   *Id.* at 27.   The KMPC also created a "regulatory scheme which both establishes the rules which must be followed and provides standing to the aggrieved competitor to challenge the decision of the administrative agency in court if he can prove that the decision or award was made in violation of the [KMPC]."   *Id.*   Specifically, the *Pendleton Bros.* Court focused on the KMPC's creation of a protest procedure in KRS 45A.285.   *Id.*   That section of the code states:

> (1) The secretary of the finance and administration cabinet, or his designee shall have authority to determine protests and other controversies of actual or prospective bidders or offerors in connection with the solicitation or selection for award of a contract.
>
> (2) Any actual or prospective bidder, offeror or contractor who is aggrieved in connection with the solicitation or selection for award of a contract may file a protest with the secretary of the Finance and

Administration Cabinet.  A protest or other notice of other controversy must be filed promptly and in any event within two (2) calendar weeks after such aggrieved person knows or should have known of the facts giving rise thereto.  All protests or notices of other controversies must be in writing.

(3) The secretary of the Finance and Administration Cabinet shall promptly issue a decision in writing.  A copy of that decision shall be mailed or otherwise furnished to the aggrieved party and shall state the reasons for the action taken.

(4) The decision by the secretary of the Finance and Administration Cabinet shall be final and conclusive.

KRS 45A.285.

Focusing on the final subsection of KRS 45A.285, the *Pendleton* Court determined that the Secretary's ruling on a protest "must be construed to mean 'final and conclusive' for administrative purposes, not as a barrier against judicial review."  758 S.W.2d at 28. Indeed, the *Pendleton Bros.* Court reasoned that "the 'supremacy of law demands that there shall be opportunity to have some court decide' whether an agency administering a statutory regulatory scheme has applied 'an erroneous rule of law . . . and whether the proceedings in which the facts were adjudicated was conducted regularly.'"  *Id.* (quoting *Humana of Ky., Inc. et al. v. NKC Hosp., Inc., et al.*, 751 S.W.2d 369, 374 (Ky. 1988)). Thus, by establishing objective purchasing criteria and providing an enforcement mechanism in the KMPC, the Kentucky General Assembly expanded standing for disappointed bidders, allowing them to challenge decisions or awards made in connection with publicly bid contracts.  *Id.* at 24; *see also Mac Construction*, 2010 WL 2044488, at *3.  Procurement decisions under the KMPC, then, are "regulated administrative procedure[s] subject to court challenge if the decision is contrary to law, or arbitrary and capricious."  *Laboratory Corp. of Am. v. Rudolph*, 184 S.W.3d 68, 74 (Ct. App. Ky. 2005)

(citing *Pendleton Bros.*, 758 S.W.2d at 30). Still, a procuring entity's decisions are entitled to a presumption of correctness. *Pendleton Bros.*, 758 S.W.2d at 30. However, the Kentucky Supreme Court has made clear that where a procuring entity fails to follow "procedures statutorily mandated, we do not regard the actions of such officials as beyond the scope of judicial inquiry." *Id.*

Boone County has not adopted the KMPC. (Doc. # 12-1 ¶ 5). Accordingly, it argues that its conduct in awarding the contract for the Project is subject to review only upon a showing of fraud, collusion, or dishonesty. (Doc. # 12 at 4). However, QCM points to the protest procedure laid out in Boone County Ordinance 6.09 and incorporated into the Invitation to Bid. (Docs. # 15-1 at 3 and 10-6 ¶ 3(O)). This provision states:

> Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or selection for award of a contract may file a protest with the Assistant County Administrator. A protest or notice of other controversy must be filed promptly and in any event within two (2) calendar weeks after such aggrieved person knows or should have known of the facts giving rise thereto. All protests or notices of other controversies must be in writing. The Assistant County Administrator shall promptly review the protest and issue a recommendation to the County Administrator. In turn, the County Administrator shall issue a decision in writing. A copy of the decision shall be mailed or otherwise furnished to the aggrieved party and shall state the reasons for the action. The decision of the County Administrator shall be final and conclusive.

(Doc. # 10-6 paragraph 3(O)). QCM claims that this protest procedure is so analogous to the KMPC's protest procedure that "the underlying logic for the holding" in *Pendleton Bros.* applies. (Doc. # 16 at 10). Therefore, QCM argues, Boone County has created a right to "have a court decide whether Boone County applied an erroneous rule of law." (*Id.*).

The question for this Court is whether the adoption of such a protest procedure confers standing on disappointed bidders in the same manner as the KMPC. QCM has

not cited a case in which a Kentucky court has addressed this issue.  And the Court's own investigation fared no better.  Because the Court is faced with an undecided question of Kentucky law, it must make "'the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with the question.'"  *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000) (quoting *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988) (cleaned up)).

Boone County's protest procedure bears a striking resemblance to KRS 45A.285.  Nonetheless, Boone County's protest procedure differs in two ways.  First, unlike the protest procedure in KRS 45A.285, Boone County's protest procedure does not confer adjudicatory authority on a Commonwealth official.  Instead, the Boone County Administrator issues the "final and conclusive" decision.  Second, Boone County's protest procedure involves a two-step review, whereby the Assistant County Administrator prepares a recommendation prior to the County Administrator's final decision.  These differences aside, the essential features—and most of the text—of the two protest procedures are the same.

In *Mac Construction v. City of Warsaw*, then-District Judge Amul Thapar addressed a similar situation.  2010 WL 2044488, at *1.  In that case, a disappointed bidder sought to challenge the City of Warsaw, Kentucky's award of two contracts for a water system improvement project.  *Id.* at *1.  The *Mac Construction* plaintiff alleged that Warsaw awarded two contracts to bidders who had submitted non-responsive bids and, as a result, acted in an arbitrary and capricious manner.  *Id.*  Although Warsaw, like Boone County, had not adopted the KMPC, the plaintiff argued that, by incorporating select provisions into the bid specifications for the project at issue, Warsaw had opened the door

24

to judicial review. In the absence of an authoritative statement of Kentucky law on the issue, Judge Thapar concluded that Warsaw's incorporation of specific KMPC provisions did not expand standing for disappointed bidders to seek the judicial review recognized in *Pendleton Bros*. *Id.* In so holding, Judge Thapar focused on the fact that Warsaw had not adopted a protest procedure like the one set forth in KRS 45A.285. *Id.* This "protest procedure provision was a critical reason why the Kentucky Supreme Court expanded standing, in light of the KMPC, for disappointed bidders." *Id.* Although Warsaw had established "objective purchasing criteria," it had not provided for the enforcement of these standards. *Id.* Indeed, Warsaw had not established any protest procedure at all. *Id.* And "without that key provision," the *Mac Construction* Court held, "the court in *Pendleton* likely would not have expanded standing for disappointed bidders." *Id.*

Unlike the City of Warsaw, Boone County has established objective criteria for the evaluation and selection of bids *and* adopted an enforcement mechanism which, by Boone County's own admission, "closely mirror[s] the KMPC[.]" (Doc. # 12 at 6). Thus, although Boone County has not adopted the KMPC in its entirety, it has incorporated portions of it, including KRS 45A.494, and established a protest mechanism with the same essential features as the KMPC's. Consequently, the Kentucky Supreme Court's reasoning in *Pendleton Bros.* and its progeny applies with equal force.[7] Thus, the Court

---

[7]    At the March 5, 2026 hearing on QCM's Motion, counsel for Boone County argued that judicial review of the County's protest determination is unavailable because Boone County Ordinance 6.09 states that the County Administrator's determination shall "be final and conclusive." But this exact language appears in the KMPC's protest provision as well. KRS 45A.285(4) ("The decision by the secretary of the Finance and Administration Cabinet *shall be final and conclusive*.") (emphasis added). And the Kentucky Supreme Court, in *Pendleton Bros.*, held that this language did not preclude judicial review. 758 S.W.2d at 28 (noting that "[t]his proviso must be construed to mean 'final and conclusive' for administrative purposes, not as a barrier against judicial review").

predicts that, faced with this question, the Kentucky Supreme Court would find that QCM has standing to seek judicial review of Boone County's protest determination. Nonetheless, the Court will not disturb Boone County's decision unless it is arbitrary and capricious or contrary to law.

A procuring entity acts arbitrarily when it takes action in excess of granted powers, fails to afford procedural due process to the affected parties, or makes a decision that is not supported by substantial evidence. *Interactive Ed. Concepts, Inc. v. Ky.*, No. 2023-CA-1151-MR, 2024 WL 3381387, at *1 (Ky. Ct. App. Jul. 12, 2024) (citing *Am. Beauty Homes Corp. v. Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964)).  A decision is arbitrary when it is not "based on a consideration of the relevant factors and . . . there has been a clear error of judgment."  *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 795 (Ky. 2019) (citation omitted).  While courts review issues of law *de novo*, procuring entities are entitled to deference in the interpretation of the statutes and regulations they are charged with implementing.  *Id.* (citing *Commonwealth, ex rel. Stumbo v. Ky. Pub. Serv. Comm'n*, 243 S.W.3d 374, 380 (Ky. Ct. App. 2007) (citation omitted)).  Still, the Kentucky Supreme Court has cautioned that "not every purchasing decision will be subject to judicial scrutiny."  *Yamaha*, 237 S.W.3d at 206.  "As a safeguard against opening the proverbial floodgates of litigation, claims based merely on differing interpretations of bid terms, without more, do not rise to the level of arbitrary and capricious conduct and may be dismissed for failure to state a claim."  *Id.* (citing *Laboratory Corp. of America v. Rudolph*, 184 S.W.3d 68 (Ky. Ct. App. 2005)).

Here, Boone County bound itself to the application of Kentucky preference law when evaluating bids for the Project. Boone County Ordinance 6.05(B) and the Invitation to Bid both state that Kentucky preference law must apply. (Docs. # 10-6 ¶ 3(Q) and 15-1 at 1). Boone County unquestionably possesses discretion to reject any and all bids and to waive any informality, if such waiver or rejection was in the County's best interest. (*See* Doc. # 10-6 ¶ 3(K)). And "claims based merely on differing interpretations of bid terms, without more, do not rise to the level of arbitrary and capricious conduct[.]" *Yamaha*, 237 S.W.3d at 206; *see also Laboratory Corp.*, 184 S.W.3d at 75 (holding that, although the plaintiff was entitled to judicial review, the Commonwealth's reasonable interpretation of bid terms does not rise to the level of arbitrary and capricious conduct). But Boone County Ordinance 6.05(B) requires that invitations for bids "shall include the reciprocal preference for resident bidders described in KRS 45A.494." (Doc. # 15-1 at 1). This requirement was reiterated in the Invitation to Bid. (Doc. # 10-6 ¶ 3(Q)). Therefore, the proper application of Kentucky preference law constitutes an objective criterion by which Boone County must abide, as opposed to an informality which may be waived. As discussed above, QCM has shown that Boone County likely misapplied Kentucky preference law to QCM's detriment. QCM argues that, because Boone County was required to apply Kentucky preference law, its *misapplication* of KRS 45A.494 exceeded its power under Boone County Ordinance and the Invitation to Bid. (Doc. # 16 at 7). Thus, QCM has shown that Boone County likely made an erroneous decision to apply a five-percent preference against QCM's bid and in favor of Lonkard and the other Kentucky bidders.

However, the fact that Boone County was required to apply Kentucky preference law in evaluating the bids does not mean that Boone County lacks the discretion to award

the contract to Lonkard.  Even if Boone County had correctly applied Kentucky preference law and concluded that QCM's bid was the lowest, Boone County Ordinances and the Invitation to Bid permitted the County to reject QCM's bid in favor of Lonkard's.  Contrary to QCM's arguments, the bidder who submits the lowest responsible and responsive bid is not entitled to the contract for the Project.  In light of Boone County's retained discretion, the Court lacks authority to compel an award of the contract for the Project to QCM.

However, because the Court concludes that a disappointed bidder in QCM's position likely has standing to seek judicial review, and because QCM has demonstrated that Boone County's application of a five-percent preference to QCM's detriment was likely erroneous, QCM has shown a substantial likelihood of success on its claim for judicial review.

### ii.   Breach of Bid Requirements

Count V of QCM's Amended Complaint asserts a claim for "Breach of Bid Requirements."  (Doc. # 10 ¶ 89).  QCM alleges that Boone County "owes a duty to the bidders to follow the bid procedures as set forth in its invitation to bid."  (*Id.* ¶ 91).  This included the application of Kentucky preference law.  (*Id.* ¶ 95).  QCM maintains that it suffered damages as a result of Boone County's failure to properly apply Kentucky preference law "because QCM would otherwise be the lowest, responsible, and responsive bidder and entitled to award of the contract for the Project."  (*Id.* ¶ 98).  So, QCM seeks either "an order requiring Defendant, Boone County, to award the Project and enter into a contract with Plaintiff" or, alternatively, damages equal to "the profits that [QCM] would have made had . . . Boone County awarded the Project to QCM as was required by the bid procedures and Kentucky Law[.]"  (*Id.* ¶ 100).

QCM has failed to demonstrate a substantial likelihood of success on its claim for "breach of bid requirements."  First, QCM has not pointed the Court to any authority recognizing "breach of bid requirements" as a viable cause of action.  And QCM cannot derive any contractual rights from the Invitation to Bid.  On the contrary, under Kentucky law, an invitation to bid does not "impose any contractual obligations."  *Ohio River Conversions, Inc. v. City of Owensboro*, 663 S.W.2d 759, 761 (Ky. Ct. App. 1984) (citing 72 C.J.S. Supplement *Public Contracts* § 11 (1975)).  Thus, to the extent that QCM contends that Boone County breached an obligation owed to QCM that flows from the Invitation to Bid, Count V of the Amended Complaint is unlikely to succeed.

Second, QCM's claim will likely fail because the Court lacks the authority to grant the requested relief.  QCM argues that it is entitled to an order from this court compelling Boone County to award the contract for the Project to QCM in the amount of $3,273,528.48.  (Doc. # 10 ¶ 100).  But Boone County was not required—either by statute or the Invitation to Bid—to award the contract to QCM, even if QCM made the lowest, responsive and responsible bid.  "While the KMPC"—and, in this case the Invitation to Bid and Boone County Ordinances—"prohibits arbitrary contract awards, it does not divest the authorized state actors of their considerable discretion in making procurement decisions.  Nor did the [KMPC] provide disappointed bidders the power to compel an award of a contract to them."  *Guardian Angel Staffing Agency, Inc. v. Com.*, No. 2013-000090, 2015 WL 3826343, at *4 (Ky. Ct. App. Jun. 19, 2015).  By necessity, if QCM was not entitled to the contract, it cannot be "entitled to the profits that it would have made" had it received the contract.  (Doc. # 10 ¶ 100).  Because Boone County was not required to award the

contract to QCM, the Court cannot grant the relief QCM requests in Count V. Accordingly, QCM has failed to show a substantial likelihood of success on this claim.

### iii.    Detrimental Reliance

Finally, QCM brings a claim for detrimental reliance. QCM alleges that, by issuing the Invitation to Bid, Boone County "made a promise to the bidders to follow all bid procedures detailed" therein. (*Id.* ¶ 102). These procedures include the proper application of Kentucky preference law. (*Id.* ¶ 103). QCM alleges that it "spent substantial resources preparing its bid and relied on Boone County to properly apply the resident bidder preference law." (*Id.* ¶ 104). Thus, when Boone County failed to properly apply Kentucky preference law, QCM suffered damages "in that QCM was not awarded the Project, QCM will not earn the profits that it otherwise would have if it was awarded the Project, and QCM's resources spent bidding on the Project were wasted." (*Id.* ¶ 106). As a result, QCM claims that "[i]njustice cannot be avoided absent an order requiring Defendant, Boone County, to follow the Kentucky resident bidder preference law, or requiring Boone County to compensate Plaintiff, QCM, for its failure to do so." (*Id.* ¶ 107). As with its claim for breach of bid specifications, QCM seeks an order compelling Boone County to award the Project to QCM, or, alternatively, damages equal to the profits that QCM would have made had it been awarded the contract. (*Id.* ¶ 108).

There is no cause of action for detrimental reliance under Kentucky law. *Hall v. Rag-O-Rama, LLC*, No. 18-cv-12-DLB-CJS, 2020 WL 2134121, at *14 (E.D. Ky. May 5, 2020) (citing *Class Racing Stable, LLC v. Breeders' Cup Ltd.*, No. 5:16-cv-200-KKC, 2017 WL 562175, at *1 (E.D. Ky. Feb. 10, 2017); *Game Science, Inc. v. Gamestation, Inc.*, No. 4:14-cv-44-JHM, 2014 WL 12726643, at *8 (W.D. Ky. Oct. 21, 2014)). Rather, detrimental

reliance is an element of another cause of action—promissory estoppel. *Game Science, Inc.*, 2014 WL 12726643, at *8. Thus, courts applying Kentucky law often construe a claim for detrimental reliance as one for promissory estoppel. *Webb v. Ky. State Univ.*, 468 F. App'x 515, 526 (6th Cir. 2012).

Kentucky has adopted the Restatement (Second) of Contracts definition of promissory estoppel, which states that:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009) (quoting *Meade Constr. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979) (quoting Restatement (Second) of Contracts § 90 (Tentative Draft No. 2, 1965))). "The doctrine of promissory estoppel is 'fundamentally different from a contract'" and "is not an alternative to a standard breach of contract claim, but rather it is founded upon a completely independent theory of recovery." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 778 (E.D. Ky. 2019) (quoting *Jan Rubin Assocs., Inc. v. Housing Auth. Of Newport*, No. 2:03-cv-160, 2007 WL 1035016, at *13 (E.D. Ky. Mar. 30, 2007) (citation omitted)). Its reason for being is the notion that detrimental reliance becomes a substitute for consideration in certain circumstances, thus making an otherwise unenforceable promise legally binding. *McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 12 (Ky. Ct. App. 1990).

Here, QCM alleges that Boone County, by stating that it would apply Kentucky preference law in the Invitation to Bid, made a promise to all bidders. (Doc. # 10 ¶ 102). This promise, in turn, prompted QCM to spend time and resources preparing a bid with the understanding that it would be subject to a proper application of Kentucky's resident

31

bidder preference. (*Id.* ¶ 104). Although the Invitation to Bid did not confer any contractual rights or obligations on Boone County or the bidders, it did include promises which Boone County should have known were likely to induce forbearance by prospective bidders. *See Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) ("[I]t is a 'widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract.'") (quoting *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 934 (8th Cir. 1999)). Consequently, when Boone County applied an inappropriate five-percent preference to QCM's detriment—in contravention of the Invitation to Bid—QCM suffered an injury in the form of wasted resources.[8] (*Id.* ¶ 106). An order requiring Boone County to properly apply Kentucky preference law in evaluating the bids could remedy this injustice. Accordingly, QCM has demonstrated a substantial likelihood of success on its claim for promissory estoppel.

## B.  Immediate, Irreparable Harm

To raise the specter of immediate, irreparable harm, QCM must show that, unless an injunction issues, they will "suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, F.3d 540, 552 (6th Cir. 2006) (citations omitted). By its very nature, an irreparable harm is not compensable by monetary damages. Lost profits are calculable and compensable through monetary damages. *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 530 (6th Cir. 2017).

---

[8]     QCM also claims it suffered damages as a result of Boone County's failure to award it the contract for the Project and the concomitant lost profits. (*Id.* ¶ 106). However, as previously discussed, the lowest responsible and responsive bidder was not entitled to the contract for the Project. As a result, Boone County's failure to properly apply Kentucky preference law may have caused Lonkard's bid to be lower than QCM's, but it did not cause Boone County to award the contract to Lonkard by operation of law. Therefore, QCM cannot seek relief premised on its entitlement to the contract as the erstwhile lowest responsible and responsive bidder.

QCM claims that it will suffer immediate harm in the form of lost profit on the Project. (Doc. # 3 at 12-13). However, QCM also claims that, if Boone County is allowed to award the contract to Lonkard under these circumstances, QCM will be deprived of valuable experience and an important credential which would allow it to generate an incalculable amount of additional business. (*Id.* at 13). This constitutes an irreparable harm. The Sixth Circuit has previously observed that the loss of goodwill inflicts an irreparable harm. *Hall*, 878 F.3d at 530 ("Although lost profits alone are calculable and compensable through monetary damages, loss of goodwill is not."); *see also Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2015) (holding that harm to goodwill and competitive position can constitute irreparable harm). Likewise, the Sixth Circuit has recognized that "the loss of experience" can constitute an imminent and irreparable harm. *Johnson v. Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011). Thus, the Court concludes that QCM will suffer an immediate, irreparable harm if Boone County awards the contract to Lonkard without first properly considering QCM's bid under Kentucky's resident bidder preference.

## C.    Harm to Others

The third factor the Court must consider is whether injunctive relief would cause substantial harm to others. *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 542. Although this factor is generally concerned with harm to third parties, "courts also often consider the balance of hardships between the parties if an injunction were to issue." *Baffert v. Churchill Downs, Inc.*, No. 3:22-cv-123-RGJ, 2023 WL 2089221, at *17 (W.D. Ky. Feb. 17, 2023) (citations omitted).

QCM argues that the harm to Boone County and Lonkard "will be minimal, if any." (Doc. # 3 at 13). Indeed, QCM points out that Boone County and Lonkard have not executed a contract for the Project at this time and "[t]he only hardship that could even occur would be delay to the Project[.]" (*Id.*). However, QCM continues, work on the Project "cannot begin in the immediate future because of the weather and the timeline to begin construction on a typical public Project." (*Id.*). As a result, even if a preliminary injunction delayed the Project, the extent of such delay would only be "a couple of weeks which is not a substantial hardship." (*Id.*).

The Court is mindful of the harm involved with delaying completion of the Project. Indeed, at the time the Court enters this Order, February has turned to March and local weather conditions pose a rapidly diminishing barrier to the beginning of work on the Project. Nevertheless, Boone County has not entered a contract with Lonkard, who has not begun work on the Project. (Doc. # 15 ¶ 28). There is no indication that Boone County and Lonkard plan to commence work on the Project in the immediate future, nor that Lonkard has incurred additional, substantial costs in anticipation of thereof. Enjoining a contract between Lonkard and Boone County under these circumstances would not involve the cessation of ongoing construction which would likely come at substantial cost to Lonkard. Likewise, even in the absence of an injunction, work on the Project is unlikely to begin in the immediate future. Therefore, any harm to the citizens of Boone County would consist of a relatively minimal delay in the completion of the Project. Although the Court concludes that issuing the preliminary injunction will likely delay commencement of work on the Project, such delay will not substantially harm Lonkard, Boone County, or third parties. Accordingly, this factor weighs slightly in favor of granting relief.

### D.    The Public Interest

Finally, the Court must consider "whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 551. The Court finds that, although there is a strong public interest in the timely completion of public works projects, there is also an important public interest in the correct application of Boone County's Ordinances and public bidding procedures. Still, the Sixth Circuit has held that, even in the face of other important considerations, "the public's true interest lies in the correct application of the law." *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022) (citing *Coal. To Def. Affirmative Action v. Granholm*, 473 F.3d 273, 252 (6th Cir. 2006)). Here, QCM has made a strong showing that Boone County erred in its application of Kentucky preference law and, by extension, its own Ordinances and Invitation to Bid. Weighing the competing interests, the Court concludes that the public interest weighs in favor of issuing an injunction.

### E.    Security

Federal Rule of Civil Procedure 65(c) states that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper . . . ." However, the Sixth Circuit has long held that "the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citations omitted). Further, "[i]t is the defendants' burden to reasonably estimate the extent to which he would be damaged if the preliminary injunction were improvidently granted." *PlanGraphics, Inc. v. Hall*, No. 05-cv-58-KKC, 2005 WL 8165601, at *1 (citing *Equifax Servs., Inc. v. Hitz*, 905

F.2d 1355, 1362 (10th Cir. 1990); *Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 250 F. Supp. 2d 372, 391 (S.D.N.Y. 2003)).

Here, Defendants have not made any representations concerning the amount of damage they would suffer upon the improvident granting of the Emergency Motion. Further, as discussed above, Boone County and Lonkard have yet to enter a contract for the Project or commence work.  As a result, the Court, in its discretion, will not impose a security requirement under Rule 65(c).

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1)    Plaintiff QCM's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3) is **granted in part**;

(2)    Defendant Boone County is hereby **enjoined** from applying a preference in favor of Kentucky bidders and against QCM with respect to the Project;

(3)    Defendant Boone County **shall reconsider** QCM's bid for the Project without applying any preference in favor of Kentucky bidders and against QCM; and

(4)    Defendant Boone County shall **file a Notice of Compliance** with this Order within **fourteen (14) days**.  Within this Notice, Defendant Boone County shall indicate which bidder was selected for award of the contract for the Project, and the reasons for this selection.

This 11th day of March, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge